Case 2:20-po-00167-JAG    ECF No. 90    filed 06/17/22    PageID.1039    Page 1 of 9

FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Jun 17, 2022

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>KERRI E. AMES,<br><br>Defendant. | Case No. 2:20-PO-0167-JAG<br>2:20-PO-0213-JAG<br><br>FINDINGS OF FACT AND<br>CONCLUSIONS OF LAW |

Defendant was charged with operation of a vessel under the influence of alcohol, in violation of 36 C.F.R. § 3.10(a)(1), and refusal to submit a test sample, in violation of 36 C.F.R. § 3.11. On May 25 and 26, 2022, and June 2, 2022, the case was tried to the Court. Defendant was present in person and represented by Assistant Federal Defender Amy Rubin and legal intern Jewel Christensen. The United States was represented by United States Attorney Timothy J. Ohms and legal intern Gloria I. Herrera.

The United States presented the sworn testimony of four witnesses, Scott Stang, Christopher Dodds, Richard Lester and Rene Buehl. Defendant presented the sworn testimony of four witnesses, Lance Platt, Maira Perez, Molly Carolan, and Courtney Carolan, and Defendant testified on her own behalf. Both parties were given the opportunity to cross-examine all witnesses. The Court also admitted into evidence certain documents, photographs, and videos.

FINDINGS OF FACT AND CONCLUSIONS OF LAW - 1

Both parties having rested, and having considered all of the foregoing evidence, the Court now issues the following Findings of Fact and Conclusions of Law:

## I.    FINDINGS OF FACT

1. On August 22, 2020, at approximately 10:00 or 10:30 a.m., Defendant and others boarded a pontoon boat upon the waters of Lake Roosevelt.

2. The Lake Roosevelt National Recreation Area is within federally owned lands and waters, within the Eastern District of Washington, and is administered by the National Park Service.

3. On August 22, 2020, at approximately 10:30 or 11:00 a.m., Defendant consumed her first Truly Hard Seltzer.  Defendant's husband, Tim, was operating the pontoon boat at that time.

4. Defendant thereafter took over the operation of the pontoon boat, arriving at a beach around 12:30 p.m.

5. Defense witnesses Molly Carolan and Courtney Carolan, longtime friends of Defendant, both indicate Defendant's operation of the boat upon arrival at the beach in the afternoon of August 22, 2020 was safe and Defendant did not appear to be intoxicated or impaired at that time.

6. Defendant and her family joined the Carolan family and other friends at the beach for a barbeque and beach games, and the pontoon boat remained secured at the beach the remainder of the afternoon.

7. Defendant actively participated in the beach games, ate a meal and snacks, continuously drank water, and consumed two additional Truly Hard Seltzers, drinking her last alcoholic beverage at approximately 2:30 p.m.

8. At approximately 5:00 or 5:30 p.m., Defendant and others reboarded the pontoon boat, and Defendant drove the boat back toward the Lincoln Mill Boat Launch.

9. Witnesses Molly and Courtney Carolan each indicate Defendant's operation of the boat upon return to the Lincoln Mill Boat Launch was safe and that Defendant did not appear affected by alcohol at that time.

10. Approximately 20 to 25 minutes later, Defendant docked the pontoon boat at the Lincoln Mill Boat Launch and began cleaning the boat and preparing it to be pulled out of the water.

11. National Park Ranger Scott Stang is a law enforcement officer employed by the National Park Service and was on duty at the Lincoln Mill Boat Launch in the evening of August 22, 2020.

12. Ranger Stang first observed the pontoon boat in question at the dock and did not observe the boat being operated on the water.

13. At approximately 6:25 p.m., Ranger Stang observed a woman, later identified as Defendant, pouring out the liquid contents of what appeared to be two Bud Light beer cans off the bow of the boat. Ranger Stang also noticed there was no boat registration number on the hull of the boat.

14. Ranger Stang approached the boat and made contact with a male who had just stepped off the boat.

15. Ranger Stang detected an odor of alcohol emanating from this individual. The male identified the operator of the boat as Defendant, the individual Ranger Stang had just observed pouring out what appeared to be two beer cans off the bow of the boat.

16. Ranger Stang made contact with Defendant and verified her Washington State Boater's Safety Card.

17. Ranger Stang asked Defendant if she had consumed any alcohol that day, and Defendant admitted she had consumed three Truly Hard Seltzers with the last being consumed around 2:30 p.m.

FINDINGS OF FACT AND CONCLUSIONS OF LAW - 3

18. Ranger Stang then asked if Defendant would be willing to do a portable breath test (PBT). Defendant indicated she was not comfortable doing a PBT.

19. Ranger Stang testified that because it is not normal for someone who has done nothing wrong to refuse to do a PBT, he asked Defendant if she would submit to the Standardized Field Sobriety Tests (SFSTs).

20. Ranger Stang had Defendant follow him to the top of the boat launch to a relatively flat, well lit, rocky and sandy area and administered the SFSTs (the eye gaze nystagmus test, the walk and turn test, and the one leg stand test).

21. Ranger Stang found a number of "clues" exhibited during the SFSTs; therefore, he determined he had probable cause to believe Defendant was under the influence of alcohol.

22. Defendant asserted her chronic back/neck issue, her oversized slide-on footwear, the poor conditions of the area where the SFSTs were administered, possible equilibrium effects from just having come off rough water, and multiple distractions during the testing, in addition to inadequate directions by Ranger Stang and improperly administered tests, prevented her from performing the SFSTs well.

23. After Ranger Stang determined the SFSTs revealed indicia of intoxication, he again asked Defendant Ames if she would do a PBT, and Defendant Ames again did not agree to submit to a PBT.

24. At approximately 7:13 p.m., Defendant Ames was placed under arrest for operating a vessel under the influence and transported to the Lincoln County Sherriff's Office.

25. Supervisory National Park Service Ranger Christopher Dodds met Ranger Stang and Defendant at the Lincoln County Sherriff's Office and assisted with processing Defendant after her arrest.

26. At approximately 8:00 p.m., Supervisory Ranger Dodds asked Defendant to submit to a breathalyzer to test her Blood Alcohol Content.

FINDINGS OF FACT AND CONCLUSIONS OF LAW - 4

27. Upon advice of counsel, through her brother, Defendant refused to provide a breath sample and signed an implied consent form indicating the refusal.

## II.    CONCLUSIONS OF LAW

### A.    Jurisdiction

1. All conduct with which Defendant is charged occurred on August 22, 2020, at the Lincoln Mill Boat Launch at the Lake Roosevelt National Recreation Area and at the Lincoln County Sherriff's Office, which is within the Eastern District of Washington.

### B.    Operating a Vessel While Under the Influence

1. 36 C.F.R. § 3.10(a)(1) prohibits the operation or actual physical control of a vessel while under the influence or alcohol and/or drugs to a degree that renders the operator incapable of safe operation.

2. On August 22, 2020, Defendant operated a pontoon boat on the waters of Lake Roosevelt between approximately 11:00 a.m. and approximately 12:30 p.m. and again between approximately 5:00 or 5:30 p.m. and approximately 6:00 p.m.

3. The pontoon boat operated by Defendant was a "vessel" within the meaning of 36 C.F.R. § 1.4(a) ("Vessel means every description of watercraft, or other artificial contrivance used, or capable of being used, as a means of transportation on the water.").

4. Defendant admittedly consumed alcoholic beverages during the day on August 22, 2020. However, there is no evidence of Defendant's blood alcohol content at any point of time during that day.

5. Shortly after 6:25 p.m., Ranger Stang made contact with Defendant and soon asked her to perform a PBT

6. Defendant declined to do a PBT, Ranger Stang then asked if Defendant would submit to the SFSTs, and Defendant consented to perform the SFSTs.

FINDINGS OF FACT AND CONCLUSIONS OF LAW - 5

7. Ranger Stang directed Defendant to the top of the boat launch to a relatively flat, graveled area, administered the SFSTs, and noted a number of "clues" exhibited by Defendant during her performance of the SFSTs. Ranger Stang determined these "clues" resulted in probable cause to arrest Defendant for operating a vessel while under the influence.

8. The results of the SFSTs as performed by Ranger Stang on August 22, 2020, are found to be less than fully reliable and are given little weight. Ranger Stang admitted on cross examination that the administration of the SFSTs was not fully in compliance with his National Highway Traffic Administration (NHTSA) training.

9. Ranger Stang did not report any other indication from Defendant of any form of intoxication. Ranger Stang reported no odor of alcohol from Defendant or that Defendant slurred her words, was combative, had difficulty retrieving documents, or had difficulty disembarking the vessel.

10. At no time did Ranger Stang witness the operation of the vessel in question on August 22, 2020, or indicate any report of the vessel being operated in an unsafe manner.

11. There is no testimony or statement indicating Defendant operated the vessel in an unsafe manner, no indication the vessel in question was involved in an accident, and no report any passengers on the vessel had been injured that day.

12. The evidence does not establish beyond a reasonable doubt that Defendant operated a vessel while under the influence of alcohol to a degree that rendered her incapable of safe operation.

### C. Refusal to Submit to Blood Alcohol Content Test

1. 36 C.F.R. § 3.11(a)(1) provides as follows:

> (a) At the request or direction of an authorized person who has probable cause to believe that an operator of a vessel has violated provisions of § 3.10, the operator must

FINDINGS OF FACT AND CONCLUSIONS OF LAW - 6

>submit to one or more testing procedures of the blood, breath, saliva or urine for the purpose of determining blood alcohol and/or drug content.
>
>(1) Refusal by an operator to submit to a test is prohibited and proof of refusal may be admissible in any related judicial proceeding.

36 C.F.R. § 3.11(a)(1).

2. On August 22, 2020, at approximately 6:25 p.m., Ranger Stang observed a woman, later identified as Defendant, pour out the contents of what appeared to be two beer cans off the bow of the vessel in question.

3. Ranger Stang made contact with a male who stepped off this vessel and perceived an odor of alcohol emanating from this individual, and that man admitted to consuming alcohol and identified Defendant, the woman observed pouring out what appeared to be two cans of beer, as the operator of the boat.

4. Based on these facts, and Ranger Stang's training and experience, Ranger Stang had reasonable suspicion to further investigate Defendant.

5. Ranger Stang made contact with Defendant but did not report an odor of alcohol from Defendant or that Defendant slurred her words, was combative, had difficulty retrieving documents, or had difficulty disembarking the vessel.

6. Ranger Stang asked Defendant if she had consumed any alcohol that day, and Defendant admitted she had consumed three Truly Hard Seltzers with the last being consumed around 2:30 p.m.

7. Ranger Stang then asked if Defendant would be willing to do a PBT.

8. Defendant indicated she was not comfortable doing a PBT.

9. With respect to this initial denial of a PBT by Defendant, although Ranger Stang continued to have reasonable suspicion to further investigate Defendant, the evidence does not establish beyond a reasonable doubt that Ranger Stang had probable cause to believe Defendant violated provisions of 36 C.F.R. § 3.10, operating a vessel while under the influence of alcohol.

10. Ranger Stang testified that based on Defendant's refusal to do a PBT, he decided to further investigate and thus asked Defendant if she would submit to SFSTs.

11. Defendant agreed to perform the SFSTs, Ranger Stang administered the SFSTs, and Ranger Stang determined a number of "clues" exhibited by Defendant during her performance of the SFSTs resulted in probable cause to arrest Defendant for operating a vessel while under the influence.

12. Ranger Stang asked Defendant a second time to do a PBT.

13. Defendant again declined to do a PBT.

14. As discussed above, the results of the SFSTs as performed by Ranger Stang on August 22, 2020 are found to be less than fully reliable and are given little weight. Consequently, while Ranger Stang had reasonable suspicion to investigate Defendant, the totality of the evidence does not establish beyond a reasonable doubt that Ranger Stang had probable cause to believe Defendant violated 36 C.F.R. § 3.10 when Defendant refused for a second time to do a PBT.

15. Defendant was placed under arrest, transported to the Lincoln County Sherriff's Office, and asked by Supervisory Ranger Dodds to submit to a breathalyzer to test her Blood Alcohol Content.

16. Defendant refused to provide a breath sample for a third time.

17. Supervisory Ranger Dodds described Defendant as very cooperative, did not observe Defendant having any difficulty walking or with balance, and stated Defendant did not have any difficulty answering questions and providing information.

18. The evidence does not establish beyond a reasonable doubt that probable cause existed to believe Defendant violated 36 C.F.R. § 3.10 when Defendant refused for a third time to submit to a breathalyzer.

### D.     Conduct of National Park Service Personnel

1. Despite opinion testimony during the defense case suggesting Defendant was somehow arbitrarily or inappropriately targeted, the Court finds no evidence whatsoever in the record to suggest Defendant was in any way arbitrarily or inappropriately targeted. Rather, the evidence introduced at trial established that Ranger Stang's contact and interactions with Defendant were appropriate and consistent with Ranger Stang's duties as a National Park Service Ranger.

2. The testimony and evidence introduced at trial established that Ranger Stang and the other National Park Service personnel involved in this case were at all times at issue in this case appropriately engaged in both a law enforcement and safety function in their roles as National Park Service Rangers.

3. Ranger Stang's interactions with Defendant were at all times professional, courteous, and appropriate as were the interactions between the other National Park Service personnel involved in this case and Defendant.

### III.     VERDICT

Based on the foregoing, the Court finds Defendant Kerri E. Ames is **NOT GUILTY** of violating 36 C.F.R. § 3.10(a)(1), operation of a vessel under the influence of alcohol (**2:20-PO-00167-JAG**), and **NOT GUILTY** of violating 36 C.F.R. § 3.11, refusal to submit a test sample (**2:20-PO-00213-JAG**).

Defendant's oral motion for a judgment of acquittal pursuant to Fed. R. Crim. P. 29 is **DENIED AS MOOT**.

The District Court Executive shall enter this Findings of Fact and Conclusions of Law and provide copies to counsel.

DATED June 17, 2022.



_____
JAMES A. GOEKE
UNITED STATES MAGISTRATE JUDGE

FINDINGS OF FACT AND CONCLUSIONS OF LAW - 9